UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

GARRISON INDUSTRIAL SERVICES INC          CASE NO.  2:25-CV-00499

VERSUS                                     JUDGE JAMES D. CAIN, JR.

CITGO PETROLEUM CORP                       MAGISTRATE JUDGE LEBLANC

## REPORT AND RECOMMENDATION

Before the court is a motion to remand filed by plaintiff Garrison Industrial Services, Inc. Doc. 11.  The motion is opposed [doc. 18], and the movant has filed a reply [doc. 20], making the motion ripe for ruling.  The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this court.

After careful consideration of this motion and the applicable law, for the reasons that follow, **IT IS RECOMMENDED** that the motion be **DENIED.**  It is **FURTHER RECOMMENDED** that the individual defendants Justin Keys and Mark Jester be **DISMISSED WITHOUT PREJUDICE** as improperly joined.

I.
BACKGROUND

Garrison Industrial Services, Inc. ("Garrison") filed suit in state court against CITGO Petroleum Corporation ("CITGO") and two CITGO employees, Justin Keys ("Keys") and Mark Jester ("Jester") (collectively, the "Employee Defendants").  Doc. 1, att. 2.  The Petition seeks damages for breach of the contract between CITGO and Garrison.  Garrison alleges that CITGO owes Garrison approximately $255,250, plus interest, for uncompensated work performed by Garrison for CITGO between January 12, 2025, and February 16, 2025.  *Id.* at 6–7.  The Petition

1

also seeks damages for Keys' intentional interference with the contract and asserts that Keys and Jester made false statements to Garrison's competitors and to CITGO about Garrison, causing reputational and business damage to Garrison.  *Id.* at 12–13.

Garrison alleges that it provides industrial contracting services and that it entered into a renewable five-year contract to supply such services to CITGO refinery in Calcasieu Parish, Louisiana, on or about June 1, 2020 (the "Contract").  *Id.* at 6.  A few months before the Contract was set to expire, on or about February 10, 2025, Garrison alleges that it received a letter from Keys on behalf of CITGO "unilaterally terminating the contract for cause" and citing safety and quality incidents at CITGO as the reason for the termination (the "Termination Letter").  *Id.*  Prior to sending the Termination Letter, Keys had informed Garrison by phone of the possibility that the Contract would not be renewed because of four "recordable incidents," and Garrison had thereafter become aware that other contracting companies working on site at the CITGO facility knew of rumors that Garrison's Contract might not be renewed.  *Id.* at 10.  The Petition alleges that these rumors caused Garrison's competitors to seek to hire Garrison's employees and generally distracted and concerned Garrison's employees working on site at CITGO.  *Id.* at 10, 13. Concerned that its employees' distraction could affect quality and safety, Garrison informed CITGO by letter on February 6, 2025, that it was halting work and requesting a meeting with CITGO to address the rumors and refocus its employees.  *Id.* at 11.  Four days later, Keys sent the Termination Letter.

Garrison disputes the existence of the safety and quality incidents referenced in Keys' phone call and the Termination Letter.  Garrison asserts that there were no "reportable" incidents attributable to Garrison employees before 2024.  Garrison acknowledges, however, a 2023 incident in which three Garrison employees "were exposed to a minor flash . . . believed to have been

caused by a sulfur pocket," causing CITGO personnel to convey the Garrison employees to a local hospital over the injured employees' objections. *Id.* at 8. Garrison also acknowledges a 2024 incident in which a Garrison employee "hit himself in the head with a probe while probing a hole in the ground" and was likewise conveyed to a local hospital. *Id.* at 8–9. Garrison acknowledges that the 2024 incident may have qualified as "reportable" under federal law and regulations because of the medical care the employee received. *Id.* at 9.

The Petition implies that in conveying these employees to the hospital, CITGO or its agents overreached by taking unnecessary action and invading Garrison's contractually-assigned duty of administering first aid to its employees per facility procedures. *Id.* at 7–9. Put differently, Garrison suggests that the only thing remarkable about these incidents was that CITGO overreacted, in essence manufacturing the incidents for which it later terminated the Contract. The Petition does not implicate any individual employee(s) as having caused this overreach.

Garrison accuses the Employee Defendants of "providing false information to persons involved in the contracting process at CITGO" about safety incidents involving Garrison and "intentionally or with a gross disregard for the truth," causing CITGO to rely on that information and decide not to invite Garrison to renew its contract and other damages. *Id.* at 10. Although Keys is alleged to have communicated with Garrison through the call and Termination Letter as described above, Jester's role is less clear. Both Jester and Keys are alleged to be "officers" of CITGO. *Id.* at 6. Keys is described as a Purchasing Agent, and Jester is described as a Safety Manager. *Id.* Jester is alleged to have been dissatisfied with Garrison's performance, despite the fact that CITGO itself was satisfied with Garrison's "safe and workmanlike product." *Id.* at 12. Both Jester and Keys are alleged to have made false statements to CITGO personnel and Garrison's competitors about Garrison's safety record. *Id.* at 10, 12.

3

Defendant CITGO timely removed this matter, asserting that the court can exercise diversity jurisdiction over this matter under 28 U.S.C. § 1332, despite the fact that the Employee Defendants share Louisiana citizenship with plaintiff Garrison.  Doc. 1.  CITGO argues that the Employee Defendants were improperly joined "ostensibly for the sole purpose of attempting to defeat diversity jurisdiction and to prevent removal of this case, since there is no possible basis for recovery against the Employee Defendants under Louisiana law."  Doc. 1, p. 2.  In making this argument, CITGO references *Canter v. Koehring Co.*, 283 So. 2d 716, 718 (La. 1973) *superseded by statute on other grounds as recognized in Walls v. Am. Optical Corp.,* 740 So. 2d 1262, 1265 (La. 1999), in which the Louisiana Supreme Court held that an employee is individually liable to a third party for the breach of an employment-imposed duty only when four criteria are present.  CITGO also argues that even *Canter* liability only applies to bodily injury claims, which are not present here.  Doc. 1, p. 4 (citing *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510 (5th Cir. 2009)).

Plaintiff Garrison moves to remand on the basis that this court cannot exercise diversity jurisdiction because both plaintiff and the Employee Defendants are Louisiana citizens.  Doc. 11.  Garrison argues that CITGO cannot meet the heavy burden of showing improper joinder because it has pled viable causes of action against the Employee Defendants for negligent misrepresentation and intentional interference with contract.  Doc. 13, pp. 4–6.  For the first time in its reply, Garrison also asserts that the Petition states a cause of action for defamation against the Employee Defendants.  Doc. 20, att. 1.  Garrison addresses CITGO's arguments as to *Canter* liability by explaining that "Plaintiffs intend to impose liability on KEYS and JESTER not because of duties imposed upon them by their employment relationship with CITGO, but because they owed a duty to the plaintiffs directly, personally.  This is not *Canter* liability."  *Id.* at 5.  Garrison

4

suggests that the Employee Defendants' liability arises as in a case it refers to simply as "*Dugas*."
*Id.* at 5.

## II.
### APPLICABLE LAW

Any civil action brought in a state court of which the federal district courts have original jurisdiction may be removed to the proper district court.  28 U.S.C. § 1441(a).  District courts have original jurisdiction over any civil action where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.  28 U.S.C. § 1332(a)(1). The diversity provisions of 28 U.S.C. § 1332(a)(1) require complete diversity of citizenship among the parties.  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  The removing party bears the burden of showing that removal was proper and that federal jurisdiction exists.  *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013).  The removal statute must be strictly construed, and "any doubt about the propriety of removal must be resolved in favor of remand."  *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).  In diversity removals, the action is not removable "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).

If removal is based on a claim that a non-diverse party has been improperly joined, then the removing party must establish either "actual fraud in the pleading of jurisdictional facts" or an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003)).  Only the latter method is relevant here, insofar as CITGO did not allege actual fraud in the pleading of jurisdictional facts.  Thus, the relevant question is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district

5

court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. "[T]here must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Ross v. CitiFinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003) (emphasis in original) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002); *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000); *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999)).

The burden of persuasion to show improper joinder is a "heavy one." *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 514 (5th Cir. 2009); *see also B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981). All allegations are evaluated in the "light most favorable to the plaintiff, resolving all contested issues of substantive fact" and ambiguities of law in the plaintiff's favor. *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 308 (5th Cir. 2005). A court should "not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so." *Id.* at 308–09.

When considering an improper-joinder claim, courts first "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant," and find generally no improper joinder if plaintiff can survive such a challenge. *Smallwood*, 385 F.3d at 573. If plaintiff has stated a claim but has "misstated or omitted discrete facts that would determine the propriety of joinder," the court has the discretion to "pierce the pleadings." *Id.* The court would then consider "summary judgment-type evidence such as affidavits and deposition testimony" to determine the propriety of the contested joinder. *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995). This type of summary inquiry is only performed in "limited circumstances[.]"

6

*Williams v. Homeland Ins. Co. of New York*, 18 F.4th 806, 812 (5th Cir. 2021).  The burden remains

with the party asserting improper joinder throughout this analysis.  *Mumfrey*, 719 F.3d at 402.

**III.**
**DISCUSSION**

As directed by *Smallwood*, the court must first "conduct a Rule 12(b)(6)-type analysis,

looking initially at the allegations of the complaint to determine whether the complaint states a

claim under state law against the in-state defendant."   385 F.3d at 573.  It is recommended that

the Petition cannot survive Rule 12(b)(6) type analysis because *Canter v. Koehring Co.* precludes

recovery.

**A.  *Canter* precludes recovery for the tort-based claims against the Employee**
**Defendants.**

In *Canter*, the Louisiana Supreme Court addressed a circuit split on this issue:  "[w]hen

and under what circumstances is the officer, agent, or employee of an employer or principal liable

to a third person (including a co-employee), when injuries caused to such third person result from

the breach of a duty imposed by his employer or principal upon the officer, agent or employee?"

283 So. 2d at 718 (alteration added).

The court concluded that breach of an employment-imposed duty could give rise to liability

to a third person only if four criteria were present.  *Id.* at 722.  Brieflly summarized, those criteria

are:  1) the principal or employer owes a duty of care to the third person, breach of which caused

damage; 2) the principal or employer delegates the duty to the defendant; 3) the defendant breaches

the duty through personal fault; and 4) personal liability cannot be imposed solely because of

defendant's  general  administrative  responsibility  for  performance  of  some  function  of

employment. *Id.* at 721.  The United States Fifth Circuit Court of Appeals has consistently held

that "*Canter* liability to third persons for the negligence of corporate officers and employees may

only be imposed for bodily injury claims." *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 515 (5th Cir. 2009).

In *Kling Realty Co. v. Chevron USA, Inc.,* the Fifth Circuit upheld the dismissal of a nondiverse employee defendant—alleged to have "supervised certain activities of the defendants' on the subject property at the time of the incident"—because the only injury alleged in the petition was economic and emotional, arising from property damage and mental distress. *Id.* at 515–16, n. 6. In the absence of bodily injury claims, the court found that plaintiffs "would not have a basis for recovery against [the employee] under Louisiana law as it has been interpreted in this circuit." *Id.* at 516.

CITGO urges the court to apply the straightforward rule of *Kling Realty Co.* to find that Garrison can have no cause of action against the Employee Defendants, absent allegations of bodily injury. Doc. 18, pp. 2–3. Garrison responds that it does not seek to impose *Canter* liability, urging the court that the reasoning of *Canter*, and the resulting limitation on a plaintiff's ability to recover from an employee defendant, does not apply because the Employee Defendants "owed a duty to the plaintiffs directly, personally" rather than a duty arising from their employment. Doc. 20, p. 5.

Garrison is correct that the *Canter* analysis does not apply when a defendant is alleged to have breached a duty that arises from a context other than his employment. This argument is supported by language in *Canter* itself, in which the court reasons, "[o]f course, the officer, agent, or employee may also be liable for injury resulting from his fault independent of any obligation imposed upon him by virtue of his employment duties, even though the fault occurs during the course of his employment." *Canter*, 283 So. 2d at 722, n. 7 (alteration added). In support of that proposition, *Canter* cites to cases including *Tyler v. Walt*, wherein the Louisiana Supreme Court

8

stated that "[a]gents are not liable to third persons for nonfeasance or mere omissions of duty. They are responsible to such parties only for the actual commission of those positive wrongs, for which they would be otherwise accountable in their individual capacity, under the obligations common to all other men." 167 So. 182, 187 (La. 1936) (imposing personal liability on bank manager who converted for the manager's personal use several bonds that plaintiff had deposited in the bank's vault for safekeeping).

In the case to which plaintiff presumably refers in its reply brief, *Dugas v. Dow Chemical Co.*, the court examined a situation in which a supervisor allegedly failed to follow company procedures to improve plaintiff's performance before terminating plaintiff for poor performance, leading the plaintiff to sue the employer and supervisor for wrongful termination. *Dugas v. Dow Chem. Co.*, No. CIV.A. 10-833-JJB, 2011 WL 7068924, at *1 (M.D. La. Oct. 24, 2011), *report and recommendation approved,* 2012 WL 170178 (M.D. La. Jan. 19, 2012). The court rejected the employer's contention that *Canter* precluded plaintiff from recovering against the supervisor, reasoning that if plaintiff's allegations were proven, the supervisor's refusal to follow internal protocols "would constitute an act outside of [the supervisor's] managerial capacity and could expose him to individual liability." *Id.* at *5 (M.D. La. Oct. 24, 2011).

As a terminated contractor, Garrison bears some resemblance to the terminated employee in *Dugas*, but the resemblance is superficial. In *Dugas*, the court appeared to accept the plaintiff's argument that the procedures in the employee manual for dealing with alleged "poor performance" defined the duties the supervisor personally owed to the terminated employee. *Dugas v. Dow Chem. Co.*, No. CIV.A. 10-833-JJB, 2011 WL 7068924, at *5 (M.D. La. Oct. 24, 2011), *report and recommendation approved*, 2012 WL 170178 (M.D. La. Jan. 19, 2012). Additionally, the court

9

focused attention on the fact that, by departing from his employer's policies and procedures, the supervisor had acted outside his "managerial capacity" and "administrative duties." *Id.* & n. 8.

Unlike in *Dugas*, Garrison does not allege that the Employee Defendants breached standard protocols in their dealings with Garrison, and Garrison does not allege or identify the personal duty the Employee Defendants would have owed to Garrison that they breached by their conduct. Nor does Garrison allege that the Employee Defendants stepped outside the general scope of their administrative duties in their dealings with Garrison.  Additionally, even if CITGO imposed on its employees a policy of absolute accuracy in communications with and about third party contractors, it is not clear that this policy would define a duty that the Employee Defendants owed to Garrison, rather than to CITGO.  In other words, it is reasonable to conclude that protocols in an employee handbook designed to protect employees from "poor performance" termination could define a supervisor's personal duty to a subordinate employee.  But Garrison makes no allegation of an analogous duty in the context of a third-party contractor's relationship with the employees of the company to whom it provides services.  Absent allegations as to the nature of the personal duty the Employee Defendants allegedly breached in their dealings with Garrison, or absent an allegation that the Employee Defendants' actions departed from the scope of their employment duties, *Dugas* is inapplicable.

The parties discuss one other situation in which courts have held that *Canter* does not apply to limit the available causes of action against an employee defendant.  This court has held that plaintiffs pled a plausible detrimental reliance claim against an employee defendant, reasoning in part that because detrimental reliance is a contract theory, "the parties' arguments about tort liability under *Canter* do not apply."  *Hoffpauir v. Russell*, No. 2:23-CV-00470, 2024 WL 1270430, at *4 at n. 1 (W.D. La. Feb. 29, 2024), *report and recommendation adopted*, 2024 WL 1266133

10

(W.D. La. Mar. 25, 2024). In that case, however, this court explicitly acknowledged that the *Canter* analysis would apply to limit plaintiff's tort-based claim for negligent misrepresentation, one of the causes of action Garrison brings against the Employee Defendants. *Id.* (citing *Simmons, Morris & Carroll, LLC v. Cap. One, N.A.*, No. CIV.A. 12-464, 2012 WL 3231040, at *5 (W.D. La. Aug. 6, 2012)). The *Hoffapauir* rule is inapplicable here, however, because Garrison's claims against the Employee Defendants are tort-based claims. *See Costello v. Hardy*, 2003-1146 (La. 1/21/04), 864 So. 2d 129, 139 ("Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name."); *Daye v. Gen. Motors Corp.*, 720 So. 2d 654, 659 (La. 1998) (negligent misrepresentation arises from La. Civ. Code articles 2315–16); *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228, 231 (La. 1989)(recognizing interference with contractual relations as a tort).

Finding no indication in the pleadings or briefs of a personal duty owed by the Employee Defendants to Garrison outside the general duties of their employment and duties owed to CITGO, it is recommended that the *Canter* analysis applies to Garrison's claims against the Employee Defendants. Consistent with the ruling of *Kling Realty Co.*, in the absence of bodily injury claims, Garrison has no basis for recovery against the Employee Defendants under Louisiana law as it has been interpreted in this circuit. 575 F.3d at 516. Accordingly, it is recommended that CITGO has borne the heavy burden of showing that Garrison has no likelihood of recovery on the tort-based claims for recovery against the Employee Defendants for negligent misrepresentation, intentional interference with contract, and defamation.

**B. The Petition fails to state a claim against the Employee Defendants for Intentional Interference with Contract.**

Additionally, even if the rule of *Canter* and *Kling* did not preclude recovery against the Employee Defendants, CITGO has also shown that there is no basis for recovery against the Employee Defendants for intentional interference with contract.

Under Louisiana law, an officer who has managerial control over a contract and its implementation can be held liable to a third party for rendering that third party's contractual performance more burdensome. *See Active Solutions, L.L.C. v. Dell, Inc.*, No. 2010-1590, 73 So. 3d 934, 949 (La. App. 4 Cir. 7/21/11). In *9 to 5 Fashions, Inc. v. Spurney*, the Louisiana Supreme Court recognized a limited cause of action for tortious interference with contractual relations that applies to a corporate officer interfering with his employer's contractual relations with third persons:

> [A]an officer of a corporation owes an obligation to a third person having a contractual relationship with the corporation to refrain from acts intentionally causing the company to breach the contract or to make performance more burdensome, difficult or impossible or of less value to the one entitled to performance, unless the officer has reasonable justification for his conduct.

538 So. 2d 228, 231 (La. 1989). The wording of *Spurney* suggests that such a claim is available only against a corporate officer, and other courts in this circuit have held that the tort is available only against such officers. *See Ashford v. Aeroframe Servs., LLC*, No. 14-CV-2323, 2021 WL 2389381, at *14 (W.D. La. Apr. 29, 2021), *report and recommendation adopted*, 2021 WL 2383912 (W.D. La. June 10, 2021), *aff'd*, 96 F.4th 783 (5th Cir. 2024) (citing *Hibernia Cmty. Dev. Corp. v. U.S.E. Cmty. Servs. Grp., Inc.*, 166 F. Supp. 2d 511, 514 (E.D. La. 2001)).

> Finding no case on point but making an *Erie* guess and in keeping with the expressed intention of Louisiana courts to limit application of this cause of action, the Eastern District of Louisiana determined that Louisiana law does not permit a cause of action for tortious interference with a contract against anyone other than an officer of a corporation. . . . District judges in all [federal] district courts in Louisiana have similarly held.

12

*Id.* (footnotes and internal citation omitted, alteration added).  The case cited by Garrison in support of its intentional interference with contract claim recognizes this point and dismisses such a claim for failure to state a cause of action because the employee-defendant was not a corporate officer. Doc. 13, p. 6 (citing *Gulf Eng'g Co., LLC v. Kuhn*, 16-425 (La. App. 5 Cir. 12/21/16), 209 So. 3d 1029, 1033, *writ denied*, 2017-0129 (La. 3/24/17), 216 So. 3d 816).

The Petition alleges that the Employee Defendants are officers of CITGO, but CITGO disputes this characterization, attaching affidavits of Keys and Jester in which they attest that they have always worked for CITGO as employees, never as officers.  Doc. 18, atts. 1, 4.  The *Smallwood* analysis allows the court to pierce the pleadings if plaintiff has stated a claim but has "misstated or omitted discrete facts that would determine the propriety of joinder."  385 F.3d at 573.  Piercing the pleadings allows the court to consider "summary judgment-type evidence such as affidavits and deposition testimony" to determine the propriety of the contested joinder. *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995).  Whether the Employee Defendants were improperly identified in the pleadings as officers of CITGO is the sort of misstatement of discrete fact that would justify piercing the pleadings.  *See, e.g.*, *Rolls on behalf of A. R. v. Packaging Corp. of Am. Inc.*, 34 F.4th 431, 436 (5th Cir. 2022) (approving piercing pleadings to consider evidence that non-diverse defendant was not present on the day of the accident and had no knowledge of the risks to which he allegedly exposed plaintiff).

Garrison makes no response to CITGO's assertion that the Employee Defendants are not officers of CITGO, and Garrison presents no evidence to contradict the affidavits provided by CITGO.  Accordingly, it is recommended that CITGO has shown that there is no possibility of recovery as to Garrison's intentional interference with contract claims against the Employee Defendants.

# IV.
## CONCLUSION

For the reasons stated, it is recommended that defendant CITGO has established that Garrison has no reasonable possibility of recovery against the non-diverse, in-state Employee Defendants, and consequently, their presence must be disregarded for purposes of subject matter and removal jurisdiction. Having determined that plaintiff improperly joined the Employee Defendants, the court necessarily lacks subject matter jurisdiction to entertain the suit against them, thereby requiring their dismissal without prejudice.

Accordingly, **IT IS RECOMMENDED** that the motion to remand be **DENIED.** It is **FURTHER RECOMMENDED** that the individual defendants, Justin Keys and Mark Jester, be **DISMISSED WITHOUT PREJUDICE** as improperly joined.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), any party aggrieved by this Report and Recommendation has 14 days from its service to file specific, written objections with the clerk of court. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation 14 days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** at Lake Charles, Louisiana, this 16th day of March, 2026.

_____
**THOMAS P. LEBLANC**
**UNITED STATES MAGISTRATE JUDGE**